IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SERAFIN CASTILLO CAMPOS, | ) |
| Petitioner, | ) |
| v. | ) 1:13-CR-129-2 |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

In 2013, the defendant-petitioner Serafin Castillo Campos pled guilty to one count of distributing 50 grams or more of a substance containing methamphetamine and one count of possession of a firearm by an illegal alien. Six years later, after the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), he moved to vacate his firearm conviction pursuant to 28 U.S.C. § 2255.

After his arrest, Mr. Castillo made statements indicating his knowledge of his unlawful status in the United States. There is no evidence he did not know he was present in the United States unlawfully, nor is there any evidence that he would have pled not guilty and mounted a trial defense that he did not know he was an alien lacking legal status had he been properly informed of the elements of the offense. Mr. Castillo's claims are procedurally defaulted, and he has not established actual innocence or substantial prejudice to overcome the procedural default. In the alternative, he is not entitled to relief under the plain error standard.

## I. Background

In 2013, Mr. Castillo was indicted on charges of distributing 50 grams or more of a mixture containing methamphetamine (Count One), possession with intent to distribute 260 grams of methamphetamine (Count Three), possession of a firearm in furtherance of a drug trafficking crime (Count Four), and possession of a firearm by an illegal alien (Count Five). Doc. 1.[1] Two months later, he pled guilty pursuant to a written plea agreement to Counts One and Five and waived his direct appeal rights in exchange for dismissal of Counts Three and Four. Doc. 34 at 2, 6.

While no transcript has been prepared of the plea colloquy, courts at the time did not understand knowledge of prohibited status to be an element of possession of a firearm by a prohibited person. *See United States v. Lockhart,* 947 F.3d 187, 196 (4th Cir. 2020) (noting that Rehaif "abrogated the prior precedent of this Circuit, which did not require proof of a defendant's knowledge that he belonged to the relevant category"). For purposes of this motion, the Court accepts that neither the Court nor his attorney informed Mr. Campos that the government would have to prove he knew he was in the United States illegally if he pled not guilty to the firearm charge.

In the proffered written factual basis by the government, to which the defendant did not object, the government stated that "[Mr. Castillo] advised the officers at the scene that he had a firearm in his bedroom inside the residence. In responding to intake

---

[1] Mr. Castillo was indicted under the name Rigoberto Gonzalez. Doc. 1. The defendant's true name, Serafin Castillo Campos, is reflected on the docket as of 5/30/2013, per a handwritten correction in the revised plea agreement. Doc. 34 at 8.

2

questions during the booking process, he advised the officers that he entered the United States illegally." Doc. 28 at 5.[2] The pre-sentence report says the same thing. Doc. 66-1 ¶ 14.[3] At sentencing, Mr. Castillo contested at least two facts in the presentence report, Doc. 44, but he did not contest the fact that he admitted his unlawful status to officers at his arrest; indeed, in his position paper on sentencing, Mr. Castillo implicitly admitted his knowledge again, noting that "unlike someone legally residing in the United States, Mr. Castillo, being undocumented, couldn't legally open a bank account. Thus, he had no choice but to stuff the cash under his pillow." Doc. 43 at 3.

Mr. Castillo's criminal history is primarily traffic offenses, of interest chiefly due to his propensity for offering false names and birthdates. Doc. 66-1 at ¶¶ 36–38. At sentencing, his criminal history score was zero and the guideline range computation was driven by the drug amount, not by Mr. Castillo's gun charge. *Id.* at ¶¶ 23–33. In 2013, the drug offense in Count One carried a statutory minimum sentence of five years of imprisonment with a minimum of four years of supervised release. *Id.* at 18.

Mr. Castillo was sentenced at the bottom of the guideline range on Count One to 135 months of imprisonment and four years of supervised release and on Count Five to 120 months of imprisonment and three years of supervised release, to run concurrently.

---

[2] For the facts, the Court relies on the factual basis for Mr. Castillo's plea, as well as his presentence investigation report. *See Greer v. United States,* 141 S. Ct. 2090, 2098 (2021) ("[W]hen an appellate court conducts plain-error review of a *Rehaif* instructional error, the court can examine relevant and reliable information from the entire record—including information contained in a pre-sentence report.").

[3] The court adopted Mr. Castillo's presentence investigation report without change. Doc. 68.

3

Minute Entry 09/13/2013; Doc. 47. The Court dismissed Counts Three and Four. Minute Entry 09/13/2013. He did not appeal.

The defendant moved in 2015 to reduce his sentence in light of the 2014 Retroactive Drug Amendment. Doc. 59. The government did not object to a revised sentence within the amended guidelines range. Doc. 67 at 1. The Court found the reduced guideline range to be 108 to 135 months, granted the motion, and reduced Mr. Castillo's sentence for both Counts One and Five to 115 months, to run concurrently with each other. Docs. 66–67, 69. The guideline range was again driven by the drug amount, not the illegal firearm possession in Count Five.

In 2019, shortly after the Supreme Court decided *Rehaif*, Mr. Castillo moved to vacate his conviction on Count Five, possession of a firearm by an illegal alien in violation of 18 U.S.C. § 922(g)(5). Docs. 80, 83. He contended that his conviction was invalid because he did not know "that his status [as an illegal alien] barred him from possessing a firearm." Doc. 80 at 3.

The Court held Mr. Castillo's motion in abeyance pending decisions in the Fourth Circuit and then the Supreme Court that were likely to provide guidance. *See* Doc. 92; Text Order 11/12/2020. After the Supreme Court's decision in *Greer v. United States,* 141 S. Ct. 2090 (2021), the Court requested additional briefing. Text Order 06/30/2021. Counsel entered an appearance for Mr. Castillo. Docs. 95, 97. Briefing is now complete.

Mr. Castillo advances two main arguments. First, he attacks the knowing and voluntary nature of his plea, saying he did not understand the offense to which he pled because he did not know the government was required to prove his knowledge of his

4

unlawful immigration status. Doc. 85 at 6. Second, he claims that the government was required to prove he knew "that because [of] his status he could not even touch a weapon legally"—in other words, he had to know it was illegal for him to possess a firearm. *Id.*

## II. *Rehaif* and *Greer*

In *Rehaif*, the defendant was charged with possession of a firearm by a prohibited person as an alien unlawfully in the United States, in violation of 18 U.S.C. § 922(g) and § 924(a)(2). 139 S. Ct. at 2194. At the close of Mr. Rehaif's trial, the judge instructed the jury, over Mr. Rehaif's objection, that the "United States is not required to prove" that Rehaif "knew that he was illegally or unlawfully in the United States." *Id.* The jury returned a guilty verdict, and Mr. Rehaif appealed, arguing that the judge erred in instructing the jury that it did not need to find that he knew he was in the country unlawfully. *Id.* at 2195. The Supreme Court agreed, holding that it is an element of the offense that the defendant has knowledge of the facts that give rise to status as a person barred from possessing a firearm. *Id.* at 2200.

*Rehaif* had wide implications, as § 922(g) also prohibits possession of a firearm by many other categories of persons. One of these categories is a person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year," § 922(g)(1), in other words, a convicted felon.

Defendants convicted under § 922(g) before the Supreme Court's decision in *Rehaif* soon raised similar challenges. The issue of knowledge of prohibited status or *mens rea* came before the Supreme Court in *Greer*, which involved two cases where the

5

defendants convicted of possession of a firearm by a felon had not challenged the knowledge element in the district court. 141 S. Ct. at 2095–96.

At Mr. Greer's trial, he did not request, and the court did not give, a jury instruction that the government must prove beyond a reasonable doubt that Mr. Greer knew he was a felon when he possessed the firearm. *Id.* at 2096. Mr. Gary pled guilty to two counts of § 922(g)(1) without being told that if he went to trial, the government would have to prove Mr. Gary knew he was a felon as an element of the offense. *Id.* Each defendant challenged his conviction on direct appeal, Mr. Greer requesting a new trial and Mr. Gary seeking vacatur. *Id.* The Eleventh Circuit applied plain-error review and rejected Mr. Greer's request for a new trial, while the Fourth Circuit found in favor of Mr. Gary and reversed his conviction for structural error caused by the failure to inform Mr. Gary of the knowledge element of § 922(g). *Id.*

On review, the Supreme Court held, as is relevant here, that "a *Rehaif* error is not a basis for plain-error relief unless the defendant first makes a sufficient argument or representation on appeal that he would have presented evidence at trial that he did not in fact know he was a felon." *Id.* at 2100. To establish eligibility for plain-error relief, a defendant must show, *inter alia*, that "the error . . . affect[s] 'substantial rights,' which generally means that there must be 'a reasonable probability that, but for the error, the outcome of the proceeding would have been different.'" *Id.* at 2096 (quoting *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018)).

The Court rejected Mr. Gary's argument that omission during the plea colloquy of the element that he must know he was a felon at the time of the offense was structural

6

error subject to automatic reversal on appeal. *Id.* at 2099–100. "[D]iscrete defects in the criminal process—such as the omission of a single element from jury instructions . . .— are not structural because they do not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id.* at 2100 (cleaned up). Because omission of the *mens rea* element from the plea colloquy does "not affect the entire framework within which the proceeding occur[ed]," automatic reversal is not required. *Id.* Instead, it is an error that calls for application of the plain-error test. *Id.* To satisfy the substantial rights prong of the plain-error test, defendants who pled guilty must show there is a reasonable probability that absent the *Rehaif* error, they would have gone to trial rather than plead guilty. *Id.* at 2097–98.

### III. Discussion

#### A. Knowing and Voluntary Guilty Plea[4]

Mr. Castillo contends that because he was not informed of an essential element of the offense—that he must have had knowledge of his status as an illegal alien when he possessed the firearm—he did not understand the offense to which he pled guilty. Essentially, he claims that his guilty plea was not knowing or voluntary.

That Mr. Castillo was not told about the knowledge element is not enough for a successful 28 U.S.C. § 2255 motion. The record is clear that he knew of his unlawful status, and he has not shown actual prejudice or actual innocence, as is required when a

---

[4] Mr. Castillo's revised plea agreement waived all collateral attacks against his conviction under § 2255 with exceptions not relevant here. Doc. 34 at ¶ 5.e. The government has responded to Mr. Castillo's motion on the merits and has not invoked the waiver. *See generally United States v. Hairston*, 754 F.3d 258, 260 (4th Cir. 2014).

7

defendant makes an argument in a § 2255 motion that he failed to make on direct appeal. Even applying the slightly more lenient plain-error test used on direct appeal per *Greer*, there was no "reasonable probability that he would have gone to trial rather than plead guilty" if he were aware of the knowledge element of the crime. 141 S. Ct. at 2098.

### 1. Procedural Default

Mr. Castillo did not raise the knowledge element issue when he was sentenced, nor did he raise it on direct appeal. He could have raised this claim on direct appeal, and generally speaking a defendant is precluded from raising the sort of claims that could have been raised on appeal. *United States v. Linder*, 552 F.3d 391, 397 (4th Cir. 2009) (citing Brian R. Means, *Fed. Habeas Practitioner Guide*, Jurisdiction ¶ 1.23.0 (2006/2007)). When he does not, his claims should be dismissed based on procedural default. *Bousley v. United States*, 523 U.S. 614, 621 (1998). To overcome procedural default, a defendant must show a "fundamental miscarriage of justice," *see McQuiggin v. Perkins*, 569 U.S. 383, 392–93 (2013), evinced by either cause for the default and actual prejudice from the asserted error, or by a showing of actual innocence. *Bousley*, 523 U.S. at 622–23.

### i. Actual Innocence

Actual innocence "means factual innocence, not mere legal insufficiency." *Id.* at 623. Here, Mr. Castillo asserts that despite his statement to officers that he was in the United States illegally, Doc. 28 at 5, he is actually innocent because there has never been a proceeding in which his presence was adjudicated to be unlawful. Doc. 97 at 5. But he cites no case to support his contention that proof of such adjudication is required and the

8

statute, which prohibits possession of a firearm by "an alien [ ] illegally or unlawfully in the United States," 18 U.S.C. § 922(g)(5)(A), does not require an earlier adjudication of illegal presence.

The uncontroverted evidence establishes he was here unlawfully. Mr. Campos was born in Mexico and has not alleged his parents were U.S. citizens or that he is a citizen. Doc. 66-1 at ¶ 44. He several times obtained a work visa to enter the United States legally, but the last time he came to the United States without obtaining a work visa, *id.* at ¶ 47, and he worked under a false name. *Id.* at ¶ 56. He admitted to law enforcement when he was arrested that he was here illegally. Doc. 28 at 5. This is overwhelming evidence that he was in the United States illegally. He does not contend that the Court failed to inform him that illegal presence was an element of the offense, and when he pled guilty, he necessarily admitted this fact. *See Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) (stating that a defendant's sworn statements during a change of plea hearing are presumed to be true). Mr. Castillo has not established actual innocence.

### ii. Cause and Substantial Prejudice

Other than a showing of actual innocence, a defendant may overcome procedural default by establishing cause for the default and actual prejudice from the asserted error. *Bousley*, 523 U.S. at 622. Mr. Castillo has not shown actual prejudice stemming from the *Rehaif* error because he has not shown that errors in the proceedings worked to his actual and substantial disadvantage and were of constitutional dimension. *See, e.g.*, *United States v. Frady*, 456 U.S. 152, 170 (1982); *Richardson v. Kornegay*, 3 F.4th 687, 701 n.8 (4th Cir. 2021).

Here the error was that Mr. Castillo was not informed by counsel or the Court that if he went to trial the government would have to prove beyond a reasonable doubt that he knew he was an illegal alien. But it is undisputed that Mr. Castillo himself admitted his unlawful immigration status to law enforcement, Doc. 28 at 5; Doc. 66-1 at ¶ 14, and in his own sentencing position papers, his attorney explained Mr. Castillo knew he couldn't open a bank account because of his lack of lawful immigration status. Doc. 43 at 3. The evidence of record about Mr. Castillo's immigration status negates any reasonable possibility of actual prejudice. *Richardson*, 3 F.4th at 701 n. 8.

Moreover, there is no evidence to show that the error worked to his substantial disadvantage. *Frady*, 456 U.S. at 170. His plea agreement was favorable, resulting in dismissal of a firearms charge that carried a mandatory minimum consecutive prison term.

### 2. Plain Error

Even if the Court excused the procedural default and applied the plain error test set forth in *Greer*, Mr. Castillo's motion would not be successful. Mr. Castillo has not sufficiently represented that had he known of the correct *mens rea* requirement, there is a reasonable probability he would have gone to trial and presented evidence that he did not in fact know he was present in the United States unlawfully. *Greer*, 141 S. Ct. at 2097.

Mr. Castillo's case is similar to Mr. Gary's case decided in *Greer*, although Mr. Gary had a different prohibited status. Mr. Gary admitted he was a felon when he pled guilty and on appeal he made no argument that he would have presented evidence at trial that he did not know he was a felon when he possessed firearms. *Id.* at 2098. Thus, he

10

Case 1:13-cr-00129-CCE   Document 98   Filed 12/02/21   Page 10 of 12

did not show that absent a *Rehaif* error there was "a reasonable probability that he would have gone to trial rather than plead guilty." *Id.* Just so with Mr. Castillo, who admitted to his unlawful status when he pled guilty and who has made no argument that he would have pled not guilty and presented evidence to the contrary at trial.

Mr. Castillo's reliance on *Lee v. United States*, 137 S. Ct. 1958 (2017), Doc 97 at 4, is unavailing. The defendant is correct that *Lee* holds a petitioner must show "a reasonable probability that [absent error] he would not have pleaded guilty and would have insisted on going to trial" without specifically mentioning a requirement that the defendant show a viable defense. 137 S. Ct. at 1965. But *Lee* arose in the ineffective assistance of counsel context, not the plain error context. *Id.* at 1964. And *Greer*— which arose in circumstances more like Mr. Castillo's—requires that the defendant show more: that he would have gone to trial to mount a defense that he did not know of his relevant status. 141 S. Ct. at 2097. His contention that it is enough for him to assert that he would not have pled guilty if he had a full understanding of the elements, Doc. 97 at 4–5, is inconsistent with the rule set forth in *Greer*. Mr. Castillo has not shown plain error.

### B. Ignorance of the Law

Mr. Castillo contends that under *Rehaif* it is an element of the offense that he knew it was illegal for him to possess a firearm. He cites no case to support his argument, which is without merit.

In *Rehaif*, the Court held that the government had to prove the defendant's knowledge of the facts that give rise to his prohibited status—i.e., that he knew he was an

11

alien illegally or unlawfully in the United States. 139 S. Ct. at 2200. The Supreme Court "did not hold that the Government must also prove that the defendant knew his or her status prohibited firearm ownership or possession," *see United States v. Singh*, 979 F.3d 697, 727 (9th Cir. 2020), and any such interpretation is inconsistent with the plain language of the statute and would raise the scienter requirement from the level in the statute—"knowingly"—to willfully. *Id.*; *accord United States v. Maez*, 960 F.3d 949, 954–55 (7th Cir. 2020). As willfulness is not an element, ignorance of the law offers no defense against § 922(g). *United States v. Bowens*, 938 F.3d 790, 797 (6th Cir. 2019).

## IV. Conclusion

When Mr. Castillo possessed a firearm in 2013, he knew he was in the United States unlawfully. He admitted that knowledge upon his arrest and in his sentencing position paper. He knew when he pled guilty that the government could easily prove his knowledge. When he pled guilty, he received the benefit of a favorable plea agreement that resulted in dismissal of two counts, one carrying a mandatory minimum sentence. His lack of knowledge of the *mens rea* element did not render his guilty plea constitutionally infirm. The motion to vacate will be denied.

It is **ORDERED** that the petitioner's motion to vacate, set aside or correct sentence, Doc. 83, is **DENIED**.

This the 2nd day of December, 2021.

_____
UNITED STATES DISTRICT JUDGE

12